Good morning, your honors. Good morning. May I please the court. My name is Marco Jimenez and I represent the petitioner in this matter. Your honors, this case is about my client who's a Mexican citizen who was placed in removal proceedings after he was arrested for driving under influence of alcohol. At the time that he was arrested, he had with him a driver's license that he obtained with a document, a birth certificate. He found that it was not his. And during the arrest, the police processed him under the name of the driver's license. Now during the search pursuant to arrest, they found the birth certificate. And eventually that led for him to be placed in removal proceedings. Now in removal proceedings, we requested adjustment status. One of petitioner's children applied for him to also apply for cancellation of removal and asylum withholding in CAT. At the end of the proceedings, the immigration judge found him inadmissible pursuant to INA 212 AC, excuse me, A6C2i for making false claim to be a US citizen. The issue before this court is whether or not the statements made to local police officers regarding a false claim of citizenship would qualify him, would disqualify him basically for adjustment status cancellation of removal. And our approach is that he should not be inadmissible pursuant to this because the police officers are not the agency in charge of policing immigration law. That would be the Immigration and Customs Enforcement Agency. Now the government makes a claim that regardless of this, we shouldn't follow the test created by the Board of Immigration Appeals in the matter of apprehension where it makes a two-pronged test saying that you have to make a false statement or false claim to be a US citizen for the purpose or benefit under immigration law, federal law, or state law. And they make this assurement that the case of Patel where the court said it doesn't matter what the intent was, the claim itself would disqualify him. But I believe the matter of Patel has to do more with the intent of the person. In that case, the petitioner, the person wanted to get a driver's license and they claim that they touched across the wrong box. So the intent was really what the issue was in that case. In this case, we're not talking about the intent. What we're talking about is what benefit was he applying for. And in this case, and that has to do with the actual Richmond test. The second prong of the Richmond test is, was there actually a benefit to be obtained from this statement? And in this case, there is no benefit because the police will not actually arrest somebody differently whether you are a US citizen versus a person who's a US citizen. That has no bearing in the actual arrest or processing. Otherwise, it would make no sense. So if you are not a US citizen, and you say, well, I'm a US citizen, and they will treat you differently. Because even though you were drunk driving, that would make absolutely no sense. We believe in this case, Patel wouldn't apply because again, that has to do with the intent of the person. So in Patel, the intent of getting a driver's license and touching the wrong box, they were actually seeking a driver's license. That was what they wanted. They went to DMV, and they actually applied for it. Well, in our case, he was being arrested for drunk driving. His citizenship had nothing to do with anything. We cannot get better treatment or worse treatment if he was or he wasn't a US citizen. And that's why Patel wouldn't actually control here. What we control here is what the BIA said in Richmond saying, okay, well, we have to look at it with a two-pronged test. And in regards to the second prong, that's where we are making the argument that even though he made that statement, and we declined the self and testimony indicated that was the intent to avoid deportation. It is to the wrong agency. The police department does not have the ability to deport any. That's not their job. Their job is to see if he was driving under the influence of alcohol or not. And that is why we are applying for this relief, Your Honor. And we believe in this case, that would control. And therefore, the judge should have found that IA-212-A6C2i was not something that would render him inadmissible. I say the floor, Your Honor. I'm sorry, I missed that last part. I saved my time. I complete my time. Okay. All right. Now, is this the case where the government is on the phone instead of by Zoom? Can you hear us? Yes, yes, yes, yes. Good morning, Your Honor. May it please the Court, Sharon Clay on behalf of the respondent. I want to apologize for appearing telephonically, but earlier when I tried to set up my Zoom, my screen kept freezing. So this morning, I was not able to appear remotely by video. All right. We can hear you just fine. Great. That's one of the downsides of relying on technology. You never know when it can fail you. That's true. The government's position is that his presentation of Vargas' license and birth certificate to the local police constituted a false claim of U.S. citizenship under the Act. Petitioner admitted that he used Vargas' citizenship status for more than a decade to get a driver's license, to seek private employment, and to avoid being placed in removal proceedings, all of which provides direct and substantial evidence of his subjective intent to achieve both a purpose and a benefit under the law. And the fact that his citizenship claim affects his ability to achieve his intended purpose of avoiding removal proceedings renders him inadmissible. His contention that it's a false claim to local police does not render him inadmissible because the police are not... I'm sorry, Councilor. I think you're going to need to slow down. We can't see you, so it's harder to hear. Oh, I'm sorry. I apologize. Oh, okay. I apologize. It's just our position is that although he claims that he's not inadmissible because he made the false claim to local police, we find that that argument is belied by the record. The fact of the matter is that his false claim to police did affect whether or not he was placed in removal proceedings or not. The police actually found his presentation of his birth certificate suspicious. Upon finding his certificate suspicious, they charged him with criminal impersonation and referred him to an ICE duty agent that was assigned to the criminal alien program. A detainer was placed on him, and he was eventually placed in ICE custody. So our position essentially is that the local police in this circumstance did have the ability to affect his removal from the United States based on their participation in the criminal alien program. The fact that they became suspicious... So, Councilor, let me make sure I understand your position. Under your reading of the statute, any undocumented individual who makes a false statement about citizenship to any officer in any state across the country thereby violates this provision, because there's always a motive to avoid deportation proceedings, right? So how expansively are you asking the court to read this particular statute? Well, I'm actually not asking the court to read it that expansively. Okay. Under these particular sets of facts, under a case-by-case scenario, this particular local police department, consistent with the matter of Richmond, actually does have the ability to affect his removal under the statute. It may not be that case in every state, but it is in this particular situation. Do you have anything saying that the police were required under law to report immigration status? And it seems if it's discretionary, I'm not sure how that fits under the law requirement. That's true. It doesn't. Well, the record is not clear on whether or not that they're required to or not. But the same is the fact when you do that with DHS. If you prevent the same false document to them, DHS also has the discretion. It's not necessarily required, per se, that the removal proceedings are instituted. It could simply be that they use their discretion not to. And that's no different here with the local police. And under matter of Richmond, the board actually acknowledged the fact that the local police could be a viable location where his claim to citizenship would affect his ability to avoid removal or not. I see the BIA is having a footnote saying maybe that would suffice, but I don't see anything in Ray Richmond saying that they made a conclusion that that was sufficient. Correct. They haven't. And I think a lot of what the board did in matter of Richmond was to sort of consider what the Third Circuit did in Castro. But the reason why the government made the argument about how expansive the case should be is under the matter of Richmond, when they made the determination that there should be some type of limitation, it sort of reads as though the board did not consider the fact that there is an exception under the statute. And the reason why it appears that all this objectivity and these actual effect issues have arisen is because there was some opining by other courts that maybe that the statute shouldn't be read so broadly. The government's position is that maybe it should be read that broadly because if materiality was a requirement in the statute, the statute would explicitly say so. But in this case, it has not explicitly said so. And in fact, they did use the term material when they cited the part on misrepresentation under section I, in which case an alien who by fraud or willfully misrepresents representing a material fact seek to procure a visa or benefit is also held inadmissible. And in that statute, which falls under the same section, they actually identify material fact, whereas in this particular part of statute, he was charged under, there is no explicit requirement there to be a material fact. I'm a little bit confused by your argument that or your response to Judge Nguyen's question about exactly what is the government's position about how this statute should be read, because I understand the Second Circuit in Richmond and the Third Circuit in Castro to be saying they're clause about under any purpose or benefit under law is a limit on the scope. And then, but then I also see you arguing in your briefs and now that essentially you think that there is no materiality requirement. So what work do you think the under purpose or under law clause is doing then? Where would you draw the line? Well, first of all, I believe that this case is whether or not the materiality aspect is included or not. I question the materiality aspect because it's not necessarily written in the statute. Where I would draw the line is if you look at the actual provision where it says, I'm sorry, where it mentions or matters when they talk about objectively, we don't oppose objectivity, but where they talk about objectivity in matter of Richmond, it mentions that the citizenship must actually affect or matter to the purpose of benefit sought. Getting back to statutory construction, usually when there's the term used or it means that it's one or the other. And so I would argue that the facts in the case do not necessarily have to reach the level of actually affect just simply that the citizenship actually mattered to the benefit that he was seeking. And under that reading of objectivity, whether it matters, the fact that citizenship is a prerequisite to the benefit that you're seeking, not that the person you're seeking it from is capable of conferring the benefit should be sufficient enough to find a person inadmissible under that. Does that clarify where the position is? I'm not sure it's clear to me, but since you mentioned Castro, I thought Castro stands for proposition that minimizing the risk that the local police may report someone's undocumented status, that alone is not sufficient to qualify as a legal benefit for purposes of this statutory provision. So how do you distinguish the statutory construction for purposes of this case, than what the Third Circuit did in Castro? Well, in Castro, I think they fell on the it wasn't necessarily established. I'm sorry, in Castro, the board seems to have like sort of glossed over, I mean, glossed over whether or not the petitioner had actually established that that was the basis for the false claim. And the it's sort of like not meeting the burden of Had the petitioner in Castro, I'm sorry, I kind of lost my notes here. Essentially, we're just saying it's Castro is, first of all, it's sort of adopted to some degree by the board in matter of Richmond, but it's distinguishable in that the petitioner in Castro. I'm sorry, could you bear with me for a second? How much time do I have on the clock? You've got four minutes and 42 seconds, but I'm interested in hearing your answer. So let me try it this way. Let me go back to my original question, because I'm still not clear on what your answer really is in terms of how you would have us construe this statute. Local police across the United States may have varying practices, but I'm not sure that that's really relevant to statutory construction, like how do we read the text of this particular provision, right? So what is your position when someone is arrested for something entirely unrelated to immigration status by a local police officer and that person basically lies about citizenship in order to minimize the risk that they'll be reported to DHS? I do agree that... Is that under those circumstances, how do you distinguish between the various states? Well, under the relevance of the claim of citizenship. In this particular case, his claims of citizenship actually was relevant to his removal or the benefit they were seeing, but if he was just solely arrested for DUI and only had submitted his driver's license, then you probably wouldn't have reached the... It probably wouldn't have triggered the statute. All right. So let me follow up on that. Are you saying that for purposes of construing this particular provision, we have to look to whether that particular jurisdiction actually reports somebody to DHS? Is that what you're saying? Not reports, just that it simply has... That it's relevant to the determination, to the benefit that you're seeking. That is sort of like the prerequisite. Right. Then that gets to Judge Sung's question. Is there any authority that these particular police officers or this particular police agency has an obligation to report somebody to DHS? No. I guess I should explain that. When I made the arguments about Patel, I was raising a point, and I'm sort of leaving that to the discretion of this court, the length or the extension that it wants to give to the statute. I was simply making the observation that whether or not they had this material aspect to it or not, Petitioner actually meets the criteria either way. So again, I'm not the court. I'm not going to be the one that necessarily makes the judgment whether or not it extends to the actual effect or not. The point is that the actual effect in this case hasn't been met, and I'm simply making that argument. And I think that's where your argument falls apart for me, because if there's no legal requirement for the police officer to report the petitioner to DHS, then what you're left with is the subjective intent of the petitioner wanting to evade or avoid the risk of being reported to DHS, which under Castro is not enough if we were to accept and follow that case law, right? Well, the thing is, is DHS also required to, under the particular circumstances, find the, actually, well, not, the DHS has the discretion to be able to continue on with moving removal proceedings or to use its discretion not to do so. So the fact that it doesn't, or does or doesn't, doesn't change it, it's no different than if it's with the local police or with the DHS. The requirement that they have to go to the criminal alien program, I think, is really not the pertinent part of this particular issue, the pertinent part of this case. The conferring event, whether or not the person is successfully able to achieve what they do, I don't think it's necessarily what the statute stands for. I think the punishment is essentially the behavior in trying to achieve the intended goal, not whether or not they were able to successfully do it. If you read any of the cases that talk about driver's license, but it's not because they were actually able to effect it, or to avoid, or to avoid, or to achieve that benefit. It's simply that they attempted to do so. So it's the attempt that In all those cases, counsel, the distinguishing factor is whether there was a law that affirmatively required the petitioner to make a representation regarding their citizenship status. When it was affirmatively required and the petitioner made that representation, there was a violation. When there was no affirmative requirement and it made no difference, the courts generally found that that does not constitute a false representation for the purpose or benefit under law, because they're reading the under law as requiring the citizenship representation. So what do we have in this case that says that at the time that Mr. Ramirez-Munoz said he was a citizen to the police, that he was actually required to prove his citizenship to the police? Well, under here, the law is, well, under this particular case, they didn't say it was a specific law. They said it was a purpose. The purpose was to avoid removal from the United States, which can be found under the law. It's sort of like the overcoming a prohibition. That's the purpose. A purpose was distinguished from benefit and that a benefit was something a little bit more tangible. But as the court has decided, it doesn't have to be a tangible benefit. It's the avoidance of a consequence of a legal benefit. And so the fact that his citizenship was relevant to the purpose that he intended, then he also meets the criteria for having violated the statute. All right, counsel, you're over time. So unless my colleagues have any additional questions. Thank you. Okay, thank you. Counsel, you've got plenty of time on the rebuttal. Yes, the issue here that we're submitting is whether or not my client is inadmissible pursuant to that when he made the statement to police and the police have no jurisdiction to enforce immigration law. That's just federalism. So in that case, because even if he intended, that was his intention is to avoid deportation. The police cannot deport him at all. So therefore, he couldn't get any purpose or benefit under immigration law, state law, or federal law. And we submit. Thank you, honors. All right. Thank you very much for your argument. That concludes today's argument calendar for this panel. We'll be in recess until tomorrow morning. All rise.
judges: NGUYEN, SUNG, Bataillon